[Civ. No. 536. Third Appellate District.—March 16, 1909.]

## M. C. MEEKER, Appellant, v. EMALINE SIMMONS and H. O. SIMMONS, Respondents.

EJECTMENT — DISPUTED EASTERN BOUNDARY OF LAND — ERRONEOUS COURSE—MONUMENTS—CENTER OF ROADS — FINDINGS BASED ON COURSE UNSUPPORTED.—In an action of ejectment involving the eastern boundary of a tract of land conveyed by plaintiff to defendant, in which an error of three degrees appears in the course of the boundary as actually located and described as extending along the center of a county road and the center of a proposed new road, which was then located and subsequently traveled, and which the evidence shows without conflict that the parties intended should constitute the eastern boundary of the land, the centers of such roads are monuments, controlling the erroneous course; and findings and judgment for defendants based upon such course are against the evidence, and cannot be supported.

ID.—QUANTITY OF LAND TO BE CONVEYED—ADJUSTMENT OF OTHER BOUNDARIES—LESS QUANTITY—EASTERN BOUNDARY UNAFFECTED.— The fact that the quantity of land to be conveyed was twenty acres, and that the quantity was attempted to be adjusted by a change in other boundaries, leaving the eastern boundary of the land unaffected, and that the plaintiff in adjusting other boundaries took off too much from the north end of the tract to leave the full twenty acres, has no tendency to controvert the proof as to the location of the eastern boundary of the land.

ID.—REMEDY OF DEFENDANT.—The defendant's remedy for the failure of plaintiff to grant the full twenty acres was not to take possession of a strip along the eastern boundary of the tract not included in

the land granted, but was against the defendant, either for damages or for specific performance, for failure of plaintiff to adjust the north line of the tract granted properly, so as to include the quantity agreed to be granted.

APPEAL from a judgment of the Superior Court of Sonoma County. Thomas C. Denny, Judge.

The facts are stated in the opinion of the court.

J. M. Thompson, for Appellant.

C. H. Pond, for Respondents.

CHIPMAN, P. J.—Action in ejectment. The cause was tried by the court without a jury and defendants had judgment, from which plaintiff appeals on bill of exceptions.

The controversy arises out of conflicting claims to about an acre of land, being a narrow strip forty or fifty feet wide, extending along the east side of the land conveyed by plaintiff to defendant Emaline Simmons.

It was stipulated at the trial, "that the first call in defendants' deed, to wit: 'thence running along the center of the county road, north 30° 45′ west 6.80 chains' is conflicting in this, north 30° 45′ west 6.80 chains, would carry the line 50 feet east of the center of the county road at the end of 6.80 chains, and the remaining portion of the line would be east of the proposed road; that to follow the call in the deed and go down the center of the county road 6.80 chains the remaining portion of the line would be the west line of the proposed road. To follow the line down the center of the county road the course would be, north 33° 45′ west, and the land described in the complaint would belong to the plaintiff; but to follow the course N. 30° 45′ west and not go down the center of the county road, the land described in the complaint would belong to the defendants."

The deed was executed and delivered November 4, 1904, and the description of the land, so far as is necessary to be stated, is as follows: "Beginning at a stake which bears South 50½° West of a stake situated under the center of the railroad bridge, said bridge being the crossing of the North Shore Railroad, and the county road leading from Occidental

to Camp Meeker, and 1.94 chains distant, running thence along the center of the county road, North 30° 45' West, 6.80 chains, thence leaving said road, along the center of proposed road, North 15° West 5.33 chains to a stake," and, as claimed by plaintiff, following the center of the proposed road to the northeast corner of the tract and thence by courses and distances around an irregular piece of ground and back to the place of beginning, "containing twenty acres of land, exclusive of the proposed new road, all courses corrected on an accepted variation of 18° East." It appeared that plaintiff proposed opening a road from a point on the county road to another point of the county road, thus avoiding a hill and also giving access to his land bordering on the proposed road, and, as testified by plaintiff, the land conveyed "was to be bounded on the east side by the new road that was already staked out at that time." Plaintiff further testified: "The county road there ran a little to the west of her (defendant's) house, and this new road ran on the east side of her house and was to take the place of the county road, the county road was to be abandoned. We proposed to run the line in the center of the new proposed road which was already partially opened up. . . . The county road was to be abandoned only where this new road took its place, that part of the county road mentioned in the deed for 6.80 chains was not to be abandoned, but just where the new one took its place, that is the reason why we called it a proposed road." And plaintiff testified, that Mrs. Simmons agreed to give half of the proposed road. Plaintiff employed surveyor Symmonds to run out the lines to the tract of land plaintiff was about to sell to defendants. Mrs. Simmons was present when this survey was made. He testified that he started at a point in the center of the county road and the first call as appears in the deed "was north 30° 45' west 6.80 chains," but he testified that "the actual survey was down about the middle of the county road leading from Occidental north." He further testified: "The next call was north 15° west 5.33 chains, which was in the center of the proposed road, running along the creek. The next call was north 32° 30' west 3.62 chains along the proposed road. The next call was north 9° 30' west 1.45 chains (the deed reads 1.47 chains), which was still

in the proposed road, I would say very near the center. This proposed road, as it was called, had been traveled some, I had traveled it myself. The proposed road showed upon its surface that it had been traveled. It had two bridges, was free and clear of everything so that it was ready for travel. The deed was made shortly after the survey.'' It appeared that this survey included a considerable excess over twenty acres, and as defendants desired to purchase only twenty acres, plaintiff reduced the amount to what he supposed was twenty acres by cutting off a strip from the north side of the tract. A second survey was made but the courses and distances along this proposed road were not changed. The evidence was that the initial error was in the course 30° 45' west which, if followed, with the other courses and distances as called for in the deed, would give twenty acres, and would fix the eastern boundary as claimed by defendants and as found by the court, whereas plaintiff claims that this call should have been 33° 45' west, which would have made the center of the proposed road the true eastern boundary of the defendants' land. It is the conceded conflict between this call in the deed and the language which follows it, to wit, ''along the center of proposed road,'' and the further language in the deed, to wit, ''containing twenty acres of land, exclusive of the proposed new road,'' that presents the question now here and upon which evidence was submitted by the parties to the controversy.

The evidence adduced by plaintiff was that defendant, Mrs. Simmons, grantee in the deed, was present when the line was run along the center of the county road and the new road; that defendants afterward moved or built their fence along the west side of this new road and that it so remained until in October, 1907, when they moved it over to the line called for in the deed and ousted plaintiff of possession and closed the new road; that this new road has been partly graded and graveled and had been traveled by the public to some extent without objection and with knowledge of defendants. The travel over the road was with light teams, heavy teams avoiding it because, as it appeared, the road as worked was not wide enough for heavy teams meeting to pass each other, nor could a light team pass a heavy one.

Witness Brush, called by defendants, testified: "The new road was being traveled when it was closed up; both roads were traveled. The new road would be traveled today if it was not closed up. At the time it was closed up the new road was traveled a good deal." Two other of defendants' witnesses testified to the use made of this new road by the public before it was closed by defendants. Both of defendants testified about this new road. Mrs. Simmons testified that this new road was not opened when she bought the land and that "it wasn't opened for use until after the earthquake. It was then used by buggies and small teams sometimes, small teams mostly. Mr. Meeker and his daughter, and his nephew who drove the stage and the like. All the teaming was on the county road." Mrs. Simmons did not deny being present when the survey of the east line was made along the center of this new road, nor did she deny that she agreed with plaintiff at that time to give half of the land; she did not deny, nor did her husband, that they built a fence along the west side of this road and that it remained there until in October, 1907, when they moved it to the line called for in the deed. There is no substantial conflict with plaintiff's evidence which showed that Mrs. Simmons understood, and that plaintiff intended, this new road to mark her eastern boundary. This road was about a quarter of a mile long, commencing at the southeast corner of the tract and intersecting the county road at the northeast corner, and would give defendants a road along the boundary line, thus avoiding a hill. It seems to us that the evidence without conflict shows conclusively that the parties by their acts and conduct treated the short piece of the county road and this new road as, and intended them to be, the true eastern boundary of the tract sold by plaintiff to defendant.

Mrs. Simmons testified: "When I bought the land I told Mr. Meeker that I wanted twenty acres and improvements, no more and no less. After the land was surveyed he told me the piece contained twenty-four acres and something. I told him I wanted twenty acres and improvements, that is what he agreed to give me and I didn't want any more. He then said he would survey it so I should have the twenty

acres. He told me he had just put stakes on the north side where the line would run, and we fenced it according to the stakes that he put in the ground." This statement is in entire harmony with plaintiff's testimony that he adjusted the acreage by cutting off a strip from the north side of the tract, leaving the eastern boundary unchanged and Mrs. Simmons testified to nothing to the contrary. The only effect on the eastern boundary by this readjustment would be to shorten the last call in the deed on that eastern line a few feet, but would not otherwise change the courses and distances along the eastern boundary and would not affect the intention of the parties as to the location of this boundary.

Surveyor Winkler surveyed and computed the acreage of the land according to the calls in the deed and found it to be "twenty and a small fraction over." Using the proposed road and the county road as the east line he found nineteen acres and a fraction. Surveyor Green made the acreage, by following the calls of the deed, "a little short of twenty acres." These witnesses did not state the magnetic variation of the compass assumed by them. The deed fixes it at 18° east. Surveyor Symmonds testified: "There is no bearing on this ground that can be depended upon; no two surveyors can give you the same bearing on account of the magnetic troubles. The deed calls for a variation of 18°, which is the medium. It is 17° above and 19° below." Assuming that the variation called for in the deed was observed by witnesses Winkler and Green, this testimony only goes to show that plaintiff took a little too wide a strip off the north end of the tract to reduce it to exactly twenty acres. It has no tendency to controvert the facts adduced as to the intention of the parties relative to the actual location of the east line. Defendants' remedy was not to take possession of this disputed strip, which, we have seen, was not intended to be included in the deed, but her remedy was against plaintiff for damages or for specific performance. He had agreed, as Mrs. Simmons testified, and as plaintiff admitted, to deed her twenty acres. If he failed to do this in readjusting the north line she had her remedy, but it was not to take possession of land which the evidence satisfactorily and without substantial conflict shows was not intended to be conveyed to her.

The foregoing would seem to make it unnecessary to consider the provisions of the deed, but they are not without significance. The county road is a permanent monument along the center of which north is the call in the deed; but to follow the call north 30° 45′ west the line leaves the county road before reaching the proposed road, "along the center" of which latter also the line was continued. It would be impossible, if the call "30° 45′ west" is to govern, to follow along the center of the proposed road, and defendants would get the whole of the new road, although the deed calls for twenty acres "exclusive of the proposed road." Now, the uncontradicted evidence is that this proposed road was staked off and located when the deed was made and has since been traveled, and its then location and its location now remains unchanged. It also was a monument as was the county road. This proposed road is again referred to in the deed where the acreage is fixed at twenty acres "exclusive of the proposed road." We may well believe that the parties fully understood what running along the center of these two roads meant when they saw the line run there, but did not understand that "north 30° 45′ west" meant something else. In the case of *Castro* v. *Barry*, 79 Cal. 443, [21 Pac. 946], the call for the course was "thence down the said slough north 72° west, 61.50 chains, to a stake in a small slough, while it was alleged and found that instead of north 72° west the course should have been north 12° west." The court held that this merely showed that the defendant's claim was based on a harmless error of description, as the wrong course was controlled by the direction to go down the slough to a given point. Not less definite and controlling is the course here— along the center of the county road and the proposed road, "north 30° 45′ west" when it should have been "north 33° 45′ west."

We think appellant's contention is correct that the actual line of the survey, when it can be shown, is the highest proof of a boundary line and that the next highest proof is that of monuments, natural or permanent objects, thereon definitely located, and that a call for courses and distances must give way to these latter. (*Kaiser* v. *Dalto*, 140 Cal. 167, [73 Pac. 828].) In the present case, we think that the evidence brings the case clearly within both of these rules, and establishes

the fact that the findings of the court favorable to defendants' contention are without support.

The judgment is reversed.

Burnett, J., and Hart, J., concurred.